STATE of Iowa, Appellee,

v.

**Benford WALKER and Glen Walker, Appellants.**

Nos. 57546, 57547.

Supreme Court of Iowa.

Dec. 17, 1975.

Rehearing Denied Feb. 17, 1976.

Benford Walker and Glen Walker, pro se.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REYNOLDSON, Justice.

In 1973 defendant brothers were caring for approximately 130 cattle on their mother's farm in Polk County. Each was charged in one preliminary information with cruelty to animals in failing to provide them with food, drink and shelter, § 717.3, The Code, and in ten separate preliminary informations with failure to dispose of a dead animal within 24 hours, § 167.18, The Code. These charges were filed in Ankeny police court. Each defendant was tried on the § 717.3 charge and one of the § 167.18 charges on June 8, 1973. Defendants appealed pro se to district court, and were each again found guilty on the two charges following trial on July 31, 1974. Their appeals here, still pro se, are consolidated, as were the trials below.

Transcript of the district court proceeding shows trial court carefully instructed defendants concerning their right to counsel and to court-appointed counsel without cost to them if they could not afford one. Trial court by diligent questioning ascertained they had been provided ample opportunity to retain a lawyer and were voluntarily electing to proceed without one.

William C. Allen, a state livestock inspector, testified he was on the Walker farm several times from January 26 to April 19, 1973. He said he saw " * * * no evidence of any feed and I never saw them fed, and they were bawling, wanting feed, and at several occasions * * * the water was froze up." On April 19 he saw several dead cattle which were decomposed and had been dead for several days. In his opinion the animals died from malnutrition.

Dr. William Owen, state department of agriculture veterinarian, testified for the prosecution. He visited the Walker farm April 7. He observed a cow which was "moor-bound" (down), thin and slobbering. He also counted nine dead cows and calves which were in " * * * various stages of decomposition, there was quite a few areas chewed on by animals, rectums had been chewed out, very thin, different ages." In his opinion they had been dead "over a period of weeks and at different times."

April 19, 1973 Dr. Owen returned to the farm with inspector Allen. The moor-bound cow was dead. The other dead cattle previously noted were still present. There had been an attempt to burn five calves, but they were only scorched. Dr. Owen opined the predisposing cause of death of these animals was lack of feed. He filed the charges against defendants.

I. Defendants' five-page typewritten brief fails to provide a single legal authority. We have held for the State on unsupported issues raised by defendants where defendants have been represented by counsel. *State v. King*, 225 N.W.2d 337, 343 (Iowa 1975); *State v. Scovill*, 224 N.W.2d 221, 223 (Iowa 1974). However, as defendants have proceeded pro se we have in this instance attempted not only to formulate the issues we vaguely discern in defendants' complaints but to provide the legal research necessary to form a balanced judgment. See *State v. Masters*, 171 N.W.2d 255 (Iowa 1969), cert. denied, 397 U.S. 1052, 90 S.Ct. 1391, 25 L.Ed.2d 667 (1970). In doing this it is not our intent to set a precedent which could only contribute to further appeal delays in this court.

■ II. *Speedy trial.* Defendants assert because over a year elapsed between trial in police court and district court trial on appeal, they were deprived of their right to speedy trial. District court, they argue, should have dismissed the charges on its own motion.

Assuming without deciding § 795.2, The Code, would apply in this trial-anew-on-appeal situation (§ 762.43, The Code), the record shows defendants were continuously free on bail. Therefore the court was not required to dismiss on its own motion. Defendants were required to, but did not, make a timely motion to dismiss. See § 795.2, The Code; *State v. Myers*, 215 N.W.2d 262, 264 (Iowa 1974); *State v. Schiernbeck*, 203 N.W.2d 546, 547 (Iowa 1973).

Defendants waived the right to assert error here by failing to raise their alleged speedy trial right below.

III. *Bill of particulars.* After the State had called its first witness to take the stand, defendants demanded the State be required to specify which of the dead animals defendants failed to dispose of within the 24 hour maximum period provided by § 167.18, The Code. Defendants variously contended they "were found not guilty" as to nine of the animals, that some of the animals "were found not guilty," and that the prosecution should "itemize the animal." These requests were overruled by trial court.

The record discloses no disposition was ever made of nine of the § 167.18 charges against each defendant. Apparently at po-

lice court level the State elected to proceed on only one of the ten charges filed.

Defendants' request is best classified as a motion for bill of particulars. Section 773.6 provides where an indictment together with the minutes of evidence filed therewith fails to inform defendant of the particulars of the offense sufficiently to enable him to prepare for trial " * * * the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes * * *." See 41 Am. Jur.2d, Indictments and Informations § 159.

Here the preliminary information charged defendants with a § 167.18 failure to dispose of "dead animal." The State, upon timely motion, should have been required to identify which of the ten dead animals the charge referred to.

■ But it is equally apparent a motion for bill of particulars should be made at the pleading stage, not after the trial is underway. Defendants had 13 months to study the preliminary information, discover it was wanting in specificity, and make their motions. At the time they raised these complaints it is possible the State did not have all its witnesses immediately available. It might have been impossible, and in any event time-consuming, to then specify an intended animal.

Our statement in *State v. Lass*, 228 N.W.2d 758, 765 (Iowa 1975) that "[t]he motion for a bill of particulars comes at the pleading state * * *" is supported by the treatises. 2 Wharton's Criminal Procedure § 356 (12th ed. 1975) (must be made "prior to trial"); 41 Am.Jur.2d, Indictments and Informations § 162, p. 982 ("should be applied for in advance of trial"); 42 C.J.S. Indictments and Informations § 156, p. 1103 ("must be timely made").

■ Because the motion was untimely, we hold it was properly overruled by trial court. We resist an impulse to waive proper procedure because defendants were un-

represented by counsel. A lay person who, without apparent reason other than a possible proclivity for courtroom combat, fails to utilize professional assistance should be ready to take the consequences.

■ IV. *Discriminatory prosecution.* Upon cross-examination of Dr. Owen by Glen Walker, the following testimony was elicited:

"Q. Did you see any animals laying around the state that were there longer than twenty-four hours? A. Specifically I can't say. I imagine there are animals. Twenty-four hours is a very short period and we very rarely, I don't know if anytime, that charges would be filed to that limit, but when it drags out for a period of months, then that's the aggravated cases we're more interested in."

Defendants allege error on the ground they were singled out for prosecution. But it is well settled that selectivity in prosecution is not per se a constitutional violation. The constitution is not violated unless the selection is deliberately based on an unjustifiable standard, i. e., race, religion, or other arbitrary classification. See *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446, 453 (1962); *Tollett v. Laman*, 497 F.2d 1231, 1233 (8 Cir.), cert. denied, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974); *State v. Smith*, 82 Iowa 423, 427, 48 N.W. 727, 728 (1891); Comment, 61 Colum. L.Rev. 1103, 1113 (1961).

■ We hold the decision to prosecute defendants was based on the aggravated nature of their violations, not on impermissible considerations. No error results.

■ V. *Sufficiency of evidence.* Defendants waived a jury trial. Trial court's judgment has the force and effect of a jury verdict. *City of Des Moines v. Huff*, 232 N.W.2d 574 (Iowa 1975). On review, this court looks only to that evidence which tends to support the verdict. *State v. Lass*, supra, 228 N.W.2d at 767; *State v. McCullough*, 226 N.W.2d 216, 217 (Iowa 1975).

■ Defendants point to testimony of Benford Walker and another witness that the cattle were fed, and assert there were inconsistencies in the State's evidence.

We have already summarized the testimony of State's witnesses, inspector Allen and state veterinarian Owen. These witnesses provided substantial evidence to sustain trial court's judgment of guilty. We find defendants' claims in this regard to be without merit.

VI. *Fair trial.* Defendants assert they were deprived of a fair trial by numerous alleged trial court errors. We shall mention those we deem worthy of comment.

■ A. A letter written by an assistant county attorney informing defendants of the district court trial date included the statement, "You should be advised that Chief Judge Holliday has indicated no continuances will be granted." It is urged this statement discouraged defendants from asking for a continuance in order to obtain the testimony of Dr. Julius Connor, Polk County health officer.

The only showing of cause for Dr. Connor's absence from trial was the following testimony of Dr. Owen:

"Q. Do you know where Dr. Connor is right now? A. I guess he is on vacation."

There is no showing defendants attempted to subpoena Dr. Connor. Defendants wholly failed to follow the requirements of § 780.2, The Code, and rules 182 and 183, Rules of Civil Procedure. Particularly relevant here is their failure to set out the facts it is believed the absent witness would prove. Rule 183, R.C.P.

It was Dr. Connor who initially called in the state department of agriculture. He exacted a promise from Dr. Owen to make a second visit to the Walker farm. The photographs of dead and dying cattle were taken by Dr. Connor's sons.

Although we do not condone the assistant county attorney's communication, defendants have shown no prejudice.

■ B. Defendants contend they should have been furnished the names of two Polk County deputies who were alleged to have reported the violations to Dr. Connor. While trial court may have wrongly sustained a hearsay objection to the question seeking to elicit these names from Dr. Owen (who said he "knew" the names), we find no reversible error. It was apparent Dr. Owen could have come by his "knowledge" only through hearsay. Defendants have shown no prejudice; the deputies were plainly potential State witnesses.

■ C. Defendants allege they were erroneously deprived of the expert testimony of Benford Walker who sought to testify certain calves were fed "adequately". But he later detailed how the calves were fed and opined "the calves on this farm were in excellent condition." Another objection to the qualification of this witness was sustained when he attempted to testify to the physiology of a cow unable to rise from the ground and the effect on its circulation system and the accumulation of poisons. Again, the opinion substantially found its way into the record in response to other questions. In any event, a determination whether a witness has sufficient expertise to answer a question is within trial court's discretion, reviewable only for abuse. *State v. Martin*, 217 N.W.2d 536, 546 (Iowa 1974); *Ganrud v. Smith*, 206 N.W.2d 311, 314–316 (Iowa 1973); C. McCormick on Evidence § 13, p. 30 (2d ed. 1972). We find no abuse of discretion here.

■ D. Defendants contend the photographs of dead and dying cattle should not have been admitted into evidence. But their trial objections were wholly inadequate. The photos were properly identified and an appropriate foundation laid for their admission.

We have examined and re-examined the record and transcript of the trial below. We are persuaded defendants were accorded a fair trial. Accordingly, defendants' convictions are affirmed.

Affirmed.