# IN THE COURT OF APPEALS OF IOWA

No. 18-1052
Filed January 9, 2020

**EDWARD A. CAMPBELL,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.

A postconviction-relief applicant appeals the district court's denial of his

postconviction-relief application. **AFFIRMED.**

Lauren M. Phelps, Hudson, Florida, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee State.

Considered by Vaitheswaran, P.J., Mullins, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**BLANE, Senior Judge.**

Edward Campbell appeals from the district court denial of his application for postconviction relief (PCR), in which he represented himself. On appeal, Campbell, now represented by counsel, contends that the district court erred in its wholesale dismissal of Campbell's pretrial motions, finding that trial and appellate counsel were not ineffective, and finding that sufficient evidence was presented to convict Campbell. Campbell raises additional issues in a pro se brief.[1]

On our review, we find no error or ineffective assistance and affirm.

## I.     Factual and Procedural Background.

Our court addressed Campbell's case on direct appeal, succinctly stating the underlying facts:

> Edward Campbell came to the apartment of acquaintance Durrell Parks, who was watching a movie with his uncle, Atrice Chaptman. Campbell opened the door, entered without Parks' permission, and hit Parks. Chaptman heard the commotion and "football-tackled" and "body-slammed" Campbell, who he had known for several years. Chaptman eventually released Campbell, and Campbell left.
> Minutes later, Chaptman saw Campbell breaking the windows of his vehicle with "some bricks or something." Chaptman called 911.

---

[1] The State moved to strike the pro se brief for failure to conform to several rules of appellate procedure. The supreme court denied the motion but transferred the case to this court with instructions to resolve whether the pro se brief should be considered given a newly enacted statute prohibiting filing or consideration of pro se briefs when the applicant is represented by counsel. *See* 2019 Iowa Acts ch. 140, § 35 (codified at Iowa Code § 822.3B(1) (2019)). Because Campbell filed his notice of appeal before the new section went into effect, we may consider his pro se brief. *See State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019) (determining the statute controlling is that in effect at the time of judgment or notice of appeal).

We note the State's brief cites Iowa Code section 814.6A, the analogous rule on direct appeal. We apply the rationale of *Macke* and *State v. Purk*, No. 18-0208, 2019 WL 5790875, at *7–8 n.8 (Iowa Ct. App. Nov. 6, 2019), in this PCR context.

*State v. Campbell*, No. 16-0550, 2017 WL 2464070, at *1 (Iowa Ct. App. June 7, 2017). Parks was treated for injuries from the scuffle at a hospital. Chaptman and Parks eventually identified Campbell in a photographic lineup. Partway through his jury trial, Campbell dismissed his attorney. Trial counsel remained as standby counsel. Ultimately, the jury convicted Campbell of first-degree burglary, second-degree criminal mischief, and assault causing bodily injury. The court sentenced him to twenty-five years imprisonment. On direct appeal, our court affirmed. *Id.* at *10.

Campbell then filed a pro se application for PCR. The district court originally appointed an attorney to represent Campbell in the PCR action but cancelled the appointment at Campbell's request. In the pretrial phrase, Campbell submitted more than eighty filings to the court. The court ruled on some, directed Campbell to consolidate the others, and required Campbell to obtain a pretrial hearing date from court administration. Campbell did not comply with this order. Rather, his filings requested the clerk of court and court administrator take care of the court's order. The court held a final pretrial conference where Campbell could not argue his motions because he did not retain copies. At commencement of the PCR trial, the court inquired what pretrial motions required the court's attention, and Campbell—unable to recall the substance of any motion—responded, "All of them." The court then stated that it had reviewed all remaining pending motions and denied them. Campbell produced no witnesses at trial, but he stated he wanted to testify and was sworn under oath. He then made a lengthy statement on his issues. The State's only witness was Campbell's criminal trial attorney.

The district court denied Campbell's PCR application on all the raised grounds. Campbell appeals.

## II.    Standard of Review.

"We generally review the denial of an application for [PCR] for correction of errors at law." *Sauser v. State*, 928 N.W.2d 816, 818 (Iowa 2019). "However, our review is de novo when the basis for [PCR] implicates a constitutional violation." *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019). "PCR applications alleging ineffective assistance of counsel raise a constitutional claim." *Id.*

## III.    Appellate Counsel's Brief.

### A. Whether the district court erred in its denial of Campbell's pretrial motions.

Campbell complains about the timing and grouping of his pretrial motions—he urges it was error for the district court to wait until the start of trial to rule and to deny them en masse. We have reviewed the many pretrial filings and conclude the district court did not err in denying them.

First, Campbell concedes that many of his pretrial filings did not require a court ruling. Upon our review, we agree. Most consisted of Campbell reiterating or arguing issues already set out in the PCR application. Campbell also concedes that certain pretrial filings were ruled on by the court. This is also confirmed by our review of the record. Campbell only identifies four specific motions on appeal, which we address individually.[2]

---

[2] Parties must identify the specific issues and grounds for their appeal or we will consider them waived. *See State v. Pals*, 805 N.W.2d 767, 785 (Iowa 2011). As we have stated before, "Judges are not like pigs, hunting for truffles buried in

Campbell first points to his October 27, 2017 "motion for court ordered expert witness or documents" ("or documents" was handwritten on a form motion), in which he sought to obtain Parks's medical and phone records and insurance records for the vehicle whose windows were broken. He asserts these were relevant to his claim that his criminal trial counsel was ineffective in failing to obtain them to support his alibi defense. We note the form Campbell wrote on for this motion is used for indigent criminal defendants to seek expert witnesses— Campbell did not identify an expert witness or seek appointment of one. He listed evidence he wanted to obtain, a process that does not require court involvement or appointment. As his own attorney, Campbell was responsible for subpoenaing and obtaining all the evidence he planned to present at trial. *See* Iowa Rs. Civ. P. 1.501, .516; *see also State v. Walker*, 236 N.W.2d 292, 295 (Iowa 1975); *Kubik v. Burk*, 540 N.W.2d 60, 63 (Iowa Ct. App. 1995). The motion required no response from the court, and the court did not err in denying it.

Campbell filed a second motion on October 27, a motion to amend asserting a third charge of assault was dismissed. This apparently responded to a State filing mentioning this charge. Although the jury found Campbell guilty of assault causing bodily injury, the trial court found it merged with the first-degree burglary conviction. We see no error in the court denying this motion.

Next, Campbell asserts his November 8, 2017 "motion/petition to amend info or discovery plan" "may contain issues not raised in the original petition." In it

---

briefs." *State v. Grider*, No. 11-2086, 2013 WL 541638 at *6 (Iowa Ct. App. Feb. 13, 2013) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)).

Campbell discussed a claimed Sixth Amendment self-representation violation,[3] not being allowed to withdraw a motion in limine, and a violation of the motion by the State offering "mugshot" evidence. But the self-representation and motion in limine issues were dealt with by our court on Campbell's direct appeal and, therefore, were improper issues in this PCR action. *Campbell*, 2017 WL 2464070, at \*1–5, \*6–8; *see also Berryhill v. State*, 603 N.W.2d 243, 245 (Iowa 1999); *Holt v. State*, No. 02-0821, 2003 WL 1786086, at \*1 (Iowa Ct. App. Apr. 4, 2003) ("[P]ostconviction relief proceedings are not an alternative means for litigating issues that were or should have been properly presented for review on direct appeal." (alternation in original)). The mugshot complaint is also a variant on Campbell's request to withdraw the motion in limine which, as we have stated, the direct appeal resolved. The PCR court did not err in denying this motion to amend.

Finally, on April 25, 2018, Campbell filed a "motion/petition to address ineffective assistance of counsel." Campbell's motion argued that his criminal trial attorney was ineffective for moving in limine to block out-of-court statements, which led to his alibi evidence (the out-of-court statements of his then fiancée) not being admitted at trial. He asserts the trial court improperly refused to grant his motion to withdraw the limine motion and this violated his Sixth Amendment rights. Finally, he claimed the trial court erred in not giving the jury his alibi jury instruction. Again, Campbell's statements all reiterate points made in other pleadings. The district court did not err in denying this motion.

---

[3] He made reference to *Feretta v. California* granting parties a right to self-representation. 422 U.S. 806, 819 (1975)

To the extent that Campbell complains about the grouping together and broad denial of his motions, we note that on April 27, 2018, the PCR court entered a pretrial order that it would not rule on the many pro se pretrial motions until Campbell had consolidated them into one pleading and requested a hearing date from court administration "so the Court may thoroughly respond to each said motion."  Rather than follow the order, Campbell filed a document requesting that the clerk or court administration do this for him.  The district court denied this request, reiterating "Plaintiff shall be responsible to obey all Orders and shall file his own combined Motion," and Campbell never complied.  Although we have addressed with detail only the specific motions raised, Campbell cannot now complain about the timing and thoroughness of the court's ruling.

We conclude the district court did not err in denying the pretrial motions.

### B.  Whether trial counsel was ineffective.

Campbell argues trial counsel was ineffective in not raising his alibi defense, primarily in counsel's failure to investigate the actual date of the crime and to file a bill of particulars and a motion to suppress the photo lineups.  Ineffective-assistance-of-counsel claims are grounded in the Sixth Amendment.  We review ineffective-assistance-of-counsel claims de novo.  *State v. Clay,* 824 N.W.2d 488, 494 (Iowa 2012).  The applicant must show "by a preponderance of the evidence that (1) trial counsel failed to perform an essential duty and (2) this failure resulted in prejudice."  *Linn,* 929 N.W.2d at 730.  We determine whether counsel's performance met the standard of a reasonably competent attorney with a presumption of competence.  *Id.* at 731.  To show prejudice, the applicant must establish that counsel's errors were serious enough to deprive him of a fair trial.

*Id.* There must be a reasonable probability the proceeding would have turned out differently. *Id.*

First, although on appeal Campbell asserts error on both a bill of particulars and a motion to suppress, the PCR court did not rule on the prudence of moving to suppress, and Campbell's arguments asserting trial counsel should have made one are not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Second, a bill of particulars is "[a] formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor, [usually] filed in response to the defendant's request for a more specific complaint." *Bill of particulars*, *Black's Law Dictionary* (11th ed. 2019). Trial counsel testified the trial information and minutes of evidence were clear enough. Throughout the PCR hearing, Campbell presented no evidence other than his testimony which the court found "lacks credibility." Campbell does not explain how having a bill of particulars at the trial court could have changed the outcome of his trial. He has not shown the requisite prejudice.

Next, Campbell faults trial counsel for a failure to investigate the date of the offense. Campbell points out the trial information states the burglary incident happened May 23, 2015. Campbell had an alibi witness, but she did not appear for the second day of trial when he would have called her.[4] He asserts, because

---

[4] The alibi witness, Charise Jackson, was Campbell's fiancée at the time. She was present in court on the first day of the criminal trial but did not return and was not present the day that Campbell wanted to call her as his alibi witness. Apparently,

his alibi witness did not testify, the times shown on Parks's medical and phone records would have proven Campbell was not the perpetrator and establish that Parks and Chaptman were lying about the date or time of the burglary and assault or damage to the vehicle. At the PCR hearing, trial counsel testified he did not investigate the medical or phone records because they did not seem relevant to whether Chaptman and Parks correctly identified Campbell on the day in question or in a photo lineup later. Chaptman and Parks knew Campbell and observed him during the incident. They both spoke to police, identified Campbell on a lineup, and testified—apparently credibly—at trial. Campbell never obtained the records he alleges would contradict the victims' stories. On this record, we agree with the PCR court that Campbell has not shown how trial counsel obtaining the records could have changed the outcome of the trial.

Campbell did not establish his criminal trial counsel was ineffective. The PCR court was correct in so ruling.

### C. Whether appellate counsel was ineffective.

Campbell asserts direct appellate counsel rendered ineffective assistance in the way they argued his Sixth Amendment claim. *See Campbell*, 2017 WL 2464070, at *4–7. At the PCR trial, he argued this deficiency affected his Sixth and Fourteenth Amendment rights. But the PCR court ruled he failed to present evidence of this "violation of his *4th* and 6th Amendment rights." (Emphasis added.) Campbell now asserts, "The PCR Court's use of the Fourth Amendment in making its ruling is clearly erroneous," and he should be granted a new felony

---

Campbell did not serve her with a subpoena. And by the time Campbell was to put on his defense, he had dismissed his attorney and was self-represented.

trial as a result. We agree the PCR court incorrectly cited the Fourth Amendment, and Campbell did not obtain a ruling under the Fourteenth Amendment. But Campbell waived any claim direct appellate counsel was ineffective under the Fourteenth Amendment by not pointing out this error to the PCR court and asking for an amended ruling. *See* Iowa R. Civ. P. 1.904(2).

### D. Sufficiency of the evidence.

Campbell insists "the PCR court erred in finding that sufficient evidence was presented to convict" him. He then argues at length about his alibi defense and asserts if he had been able to present it, the trial court would have dismissed the case without submitting it to the jury.

Campbell does not make clear under what ground for PCR he categorizes this claim. *See* Iowa Code § 822.2(1)(a)–(h) (setting out the circumstances under which a convicted person may obtain relief under the PCR chapter). The PCR court ruled on the sufficiency of the evidence and found "the jury properly weighed all the evidence and unanimously voted to convict" Campbell. Upon our review of the record and briefs, we conclude we may consider this claim as one of "actual innocence" brought under *Schmidt v. State*, 909 N.W.2d 778, 795 (Iowa 2018) (finding "the Iowa Constitution permits freestanding claims of actual innocence" and "freestanding claims of actual innocence permitted by the Iowa Constitution are available to applicants even though they pled guilty"). The applicant must "meet the demanding actual-innocence standard to prove the validity" of their claim. *Dewberry v. State*, ___ N.W.2d ___, ___, 2019 WL 6633750, at *4 (Iowa 2019) (quoting *Schmidt*, 909 N.W.2d at 793). A "postconviction-relief applicant can establish a claim of actual innocence only upon clear and convincing evidence

he or she was factually innocent of the offense of conviction, including any lesser included offenses thereof." *Id.* at *8. Campbell asserts he is exonerated by the alibi evidence he claims exists.

Here, we find that there was more than sufficient evidence to support Campbell's conviction. Chaptman and Parks were familiar with Campbell, testified he was their assailant, and observed him breaking the car windows. Campbell does not present any credible evidence to support his alibi defense. The record falls far short of the "actual innocence" showing. Therefore, we find the PCR court was correct in denying Campbell's claim.

## IV. Pro Se Brief Issues.

### A. Ineffective assistance of trial counsel.

Although labelled as ineffective assistance, Campbell's first and second pro se arguments are general sufficiency-of-the-evidence claims or reiterate the arguments already made by counsel. We find these issues were adequately addressed above.

### B. Criminal judge recusal and violation of eleventh amendment.

Campbell points out that the judge who presided over his criminal trial had served as his attorney in defending a criminal case in 2002, asserts this constituted a conflict of interest, and argues the judge should have recused himself. Campbell did not raise this issue before the PCR court, so it is waived. In any case, the only legal authority Campbell cites is the Eleventh Amendment (presumably to the United States Constitution), which provides no legal support for this issue.

Despite Campbell's title of this issue being limited to the claimed judge's conflict of interest, he lumps in more arguments, including prosecutorial

misconduct. Campbell complains the prosecutor in his criminal case had a conflict of interest and conspired with the Davenport Police Department to convict him. Campbell moved to dismiss his criminal case based on the prosecutor's alleged conflict of interest, which the trial court denied. On our review of the evidence presented at the PCR trial, we find no basis supporting his claim.

### C. Jury issues.

Campbell complains that during his criminal trial he could not pick his own jury. We note that during jury selection, Campbell was represented by counsel. He does not contend that trial counsel was ineffective in jury selection. Rather, Campbell continues to complain about jurors who knew law enforcement officers, had been victims of burglary, did not live in Davenport, and were "not young."

Jury selection in criminal cases is controlled by Iowa Rule of Criminal Procedure 2.18(5)(k) dealing with disqualifications for cause and rule 2.18(9) providing for peremptory challenges. *See State v. Jonas*, 904 N.W.2d 566, 571 (Iowa 2017). Campbell's argument here does not involve violation of either rule. He also has not stated with any specificity which jurors he would have struck and why or how their remaining on the jury prejudiced his case. Trial counsel testified he thought it was typical for some jurors to be acquainted with law enforcement officers, and he either made sure there was no direct bias or sought to strike the juror. He added he had no concerns about the impartiality of the impaneled jury. On this record, Campbell has not proved his claim. Campbell adds there was only one minority juror. The PCR court did not address any jury representation issue, so we do not address it on appeal.

Finally, Campbell claims the jury instructions "misled," "misguided," or "brainwashed" the jury. He does not set forth an argument on any one particular instruction or how it was a misstatement of the law. We observe that when the court addressed jury instructions, Campbell had assumed his pro se representation, thus he cannot claim ineffective assistance of counsel in this regard. Even so, trial counsel—by then standby counsel—testified they were all stock instructions. Without greater specificity on the alleged deficiencies, we cannot address the argument. *See Soo Line R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (finding "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration"); *Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983) ("[I]ssues are deemed waived or abandoned when they are not stated on appeal by brief; random discussion of difficulties, unless assigned as an issue, will not be considered.").

## V. Conclusion.

Having thoroughly reviewed those claims properly presented to us, and explaining why other claims do not warrant our consideration, we conclude that the PCR court properly denied Campbell's PCR application and affirm.

**AFFIRMED.**